## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x
                                :
In re                             :     Chapter 11
                                  :
AFA INVESTMENT INC., *et al.*,[1]    :     Case No. 12- **11127** ( _____ )
                                  :
           Debtors.              :     (Joint Administration Pending)
                                  :
-------------------------------------------------------x

## MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§105, 107, 361, 362, 363, 364 AND 507 AND RULES 2002, 4001, 9014 AND 9018 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCINGS, (B) USE CASH COLLATERAL (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors (collectively, the "Debtors") hereby move the Court

for the entry of an order, in substantially the form attached hereto as Exhibit A (the "Interim

Order"), and a final order (the "Final Order"), under sections 105, 107, 361, 362, 363(c), 363(e),

364(c), 364(d)(1), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532

(the "Bankruptcy Code"), and Rules 2002, 4001, 9014 and 9018 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-2 and 9018-1(b) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"): (a) authorizing the Debtors to (i) obtain postpetition

financing pursuant to a revolving first lien debtor-in-possession financing facility (the "DIP

Facility") on the terms described herein and (ii) utilize cash collateral; (b) granting liens and

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): AFA Investment Inc. (0331); American Foodservice Corporation (1780); American Fresh Foods, Inc. (7389); American Fresh Foods, L.P. (7302); AFA Foods, Inc. (0429); American Fresh Foods, LLC (7301); Fairbank Reconstruction Corporation (2405); American Foodservice Investment Company, LLC (9525); and United Food Group LLC (7584). The address of each of the Debtors is 860 First Avenue, Suite 9A, King of Prussia, Pennsylvania 19406.

super priority administrative claims; (c) scheduling a final hearing with respect to the relief requested herein; and (d) granting related relief (the "Motion"). In support of this Motion, the Debtors incorporate the statements contained in the Declaration of Ron Allen in Support of First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

## Introduction

1.    As more fully described in this Motion and in the First Day Declaration, several factors recently have come together to severely impact the Debtors' near-term liquidity, precipitating the commencement of these chapter 11 cases and requiring the Debtors to seek immediate access to the Debtors' proposed debtor-in possession financing facility (the below-defined "DIP Facility").[2] The proposed postpetition financing will, among other things, provide capital necessary to allow the Debtors to continue normal business operations while they attempt to consummate a going-concern sale of substantially all of their assets in attempt to maximize the value of their estates for the benefit of all stakeholders.

2.    As a result, by this Motion the Debtors seek authorization to obtain postpetition financing pursuant to the terms set forth in this Motion, that certain Debtor-In-Possession Credit Agreement (the "DIP Credit Agreement"), dated as of April 1, 2012, the Interim Order and the Final Order. The Debtors intend to use the proceeds of the DIP Facility immediately upon the entry of, and on the terms set forth in, the Interim Order.

## Background

3.    On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. By a motion filed on the Petition Date, the

---

[2]    Terms not otherwise defined herein shall have the meanings given to them in the DIP Facility.

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

5.     The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     Debtor AFA Investment Inc., a Delaware corporation, is the sole member of Debtor United Food Group, LLC and the sole direct owner of Debtor AFA Foods, Inc., which in turn is the direct or indirect owner of each of the other Debtors.  Seven of the nine Debtors are Delaware companies.

7.     The Debtors are among the largest ground beef processing enterprises in the United States.  Annually, the Debtors process more than 500 million pounds of ground beef products, which are distributed primarily to restaurants and retailgrocery stores across the United States.  The Debtors operate beef processing facilities in California, Georgia, New York, Pennsylvania and Texas and maintain their headquarters in King of Prussia, Pennsylvania.

8.     As of the Petition Date, the Debtors have approximately 850 full time employees.  As of December 31, 2011, on a consolidated basis, the Debtors' books and records reflected approximately $958 million in annual revenues  As of February 29, 2012, on a consolidated basis, the Debtors' books and records reflected approximately $219 million in assets and $197 million in liabilities.

9.     As described in the First Day Declaration, the Debtors have commenced these cases to conduct a prompt sale of their business assets with the goal of preserving and maximizing value for stakeholders.

***The Debtors' Debt Structure***

10.     The Debtors' primary liabilities consist of: (a) a first lien credit facility secured by a first lien in substantially all of the Debtors' assets; (b) a second lien credit facility secured by a second lien in substantially all of the Debtors' assets; (c) certain industrial development bonds and (d) unsecured trade and other debt arising from the Debtors' operations.

*First Lien Credit Facility*

11.     The Debtors (some as borrowers and some as guarantors)[3] are party to that certain Amended and Restated Credit Agreement, dated as of February 9, 2010, as amended by (a) that certain Forbearance Agreement and Amendment No. 1, dated as of April 5, 2011; and further amended by (b) that certain Second Forbearance Agreement, dated as of August 4, 2011; (c) that certain Third Forbearance Agreement and Amendment No. 2, dated as of December 7, 2011; and (d) that certain Fourth Forbearance Agreement, dated as of March 16, 2012 (as further amended prior to the date hereof, the "Prepetition First Lien Credit Facility"), with General Electric Capital Corporation ("GECC"), as Agent (the "Prepetition First Lien Agent"). The lenders under the Prepetition First Lien Credit Facility are GECC and Bank of America, N.A. (together, the "First Lien Lenders"). The Prepetition First Lien Credit Facility provided the Debtors with a term loan in the amount of $15,360,715 and revolving loans (the "Prepetition Revolving Loans") in an amount up to $68,600,000. As of the Petition Date, approximately

---

[3]     AFA Foods, Inc., American Foodservice Corporation, Fairbank Reconstruction Corporation, American Fresh Foods, L.P., United Food Group LLC are each borrowers, and AFA Investment Inc., American Foodservice Investment Company, LLC, American Fresh Foods, LLC and American Fresh Foods, Inc. are each guarantors under the Prepetition First Lien Credit Facility.

$11.5 million was outstanding under the term loans and approximately $47.9 million was outstanding under the revolving loan. In addition, the Debtors have issued letters of credit under the Prepetition First Lien Credit Facility ("Prepetition Letters of Credit") in the approximate amount of $3.1 million. The Letters of Credit remained outstanding as of the Petition Date.

*Second Lien Credit Facility*

12.    The Debtors (as borrowers or guarantors) also are party to that certain Second Lien Credit Agreement, dated as of February 9, 2010, as amended by (a) that certain Waiver and First Amendment to Credit Agreement, dated as of April 5, 2011, and as further amended by (b) that certain Waiver and Second Amendment to Credit Agreement and Ratification of Guaranty and Security Agreement, dated as of December 7, 2011 (the "Prepetition Second Lien Credit Facility"), with Yucaipa Corporate Initiatives Fund II, LLC as agent (the "Prepetition Second Lien Agent"). The Prepetition Second Lien Credit Facility initially provided the Debtors with a term loan in the approximate amount of $42.7 million dollars. The subsequent amendments to the Prepetition Second Lien Credit Facility provided for additional loans to the Debtors, as did interest accruing on a "payment in kind" basis, increasing the approximate amount outstanding to $75.6 million.

*Revenue Bonds*

13.    Debtor American Fresh Foods, LP is the obligor under certain industrial development bonds relating to the construction of a facility in Thomasville, Georgia: the $1,000,000 Thomasville Payroll Development Authority Tax-Exempt Variable Rate Demand/Fixed Rate Revenue Bonds (American Fresh Foods, L.P. Project) Series 2005A and (b) the $7,425,000 Thomasville Payroll Development Authority.

## Relief Requested

14.    By this Motion, the Debtors seek entry of the Interim and Final Orders:

(a)     authorizing the Debtors to obtain postpetition financing, as set forth below and in the DIP Credit Agreement, with General Electric Capital Corporation (the "DIP Agent"), as agent, and the other lenders party to the DIP Credit Agreement (collectively, the "DIP Lenders"), with funds thereunder available for use in accordance with the budget (as amended, modified or updated in accordance with the DIP Credit Agreement, the "DIP Budget") and the other terms set forth in the DIP Credit Agreement;

(b)     authorizing the Debtors to grant security interests, liens and super-priority claims (including a super-priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) on the DIP Collateral;

(c)     authorizing the Debtors to make non-refundable payments of the principal, interest, fees, expenses and other amounts payable in accordance with the terms of the DIP Facility and any interim or final order approving the DIP Facility;

(e)     authorizing the Debtors to utilize cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, "Cash Collateral"), in which the Prepetition Lenders have an interest, subject to the terms and conditions set forth in the Interim Order;

(i)     scheduling an emergency interim hearing (the "Interim Hearing") on this Motion for this Court to consider entry of the Interim Order, which authorizes the Debtors to borrow up to $55 million on an interim basis in accordance with the terms of the DIP Facility and Interim Order;

(j)     scheduling of a final hearing (the "Final Hearing") on the Motion no later than 25 days after the Petition Date, to consider entry of a Final Order authorizing the Debtors to (i) enter into the DIP Facility on a final basis and (ii) borrow up to $60 million in accordance with the terms of the DIP Facility and Final Order ; and

(k)     modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement the terms of the DIP Credit Agreement, Interim Order, Final Order, and as otherwise provided herein.

***The Debtors' Immediate Need for Liquidity***

15.     As set forth in the First Day Declaration, several factors recently have

come together to severely impact the Debtors' near-term liquidity, precipitating the

commencement of these chapter 11 cases.  Specifically, the Debtors' business relies almost

exclusively on ground beef products.  Generally, the pricing of both the raw materials and many

of the Debtors' finished products are based on USDA national pricing indexes.  After accounting

for processing costs, the spread between these indexed prices allows only thin margins.  As a

result, Debtors have struggled to generate sufficient cash flow to satisfy their prepetition debt

obligations.

16.     In addition, there has been national public outcry over the use of Boneless

Lean Beef Trimmings ("BLBT") in meat products.  This controversy has dramatically reduced

the demand for beef products containing BLBT, as well as BLBT-free products.  Many retail

outlets – including customers of the Debtors – have succumbed to public pressure to reduce or

eliminate the sale of products containing BLBT, and to prominently label products containing

BLBT.  Although the Debtors' products do not rely on the use of BLBT – which is used only to

the extent that it is required by the specifications of orders received from customers – the

Debtors have been faced with the need to transition to BLBT-free products at substantial cost.  In

the meantime, the controversy has persisted longer than expected, and has dramatically impacted

the Debtors' sales volumes.  As a result, the Debtors quickly exhausted a $5 million overadvance

the First Lien Lenders provided prior to the Petition Date.

***Debtors' Efforts to Obtain Postpetition Financing***

17.     After determining that the commencement of these cases was necessary,

the Debtors, with the assistance of their professional advisors, explored their options with respect

to postpetition financing.  These options were limited somewhat by the Debtors' prepetition debt

structure. The Debtors ultimately determined that a financing proposal by their existing lenders under the Prepetition First Lien Credit Facility provided the Debtors with the best opportunity to continue operations and explore a potential going-concern sale of their assets.

***Material Terms of the DIP Facility***

18.     The principal terms of the DIP Facility are as follows:[4]

| | |
|---|---|
| **Borrowers:** | AFA Foods, Inc., American Foodservice Corporation, Fairbank Reconstruction Corporation, American Fresh Foods, L.P. and United Food Group LLC, as debtors and debtors-in-possession (collectively, the "Borrowers") under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in jointly administered cases (collectively, the "Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") |
| **Guarantors:** | AFA Investment Inc., American Foodservice Investment Company, LLC, American Fresh Foods, LLC and American Fresh Foods, Inc., as debtors and debtors in possession (collectively, the "Guarantors" and, together with the Borrowers, the "Debtors") shall unconditionally guarantee the Borrowers' obligations under the DIP Facility |
| **DIP Agent:** | GE Capital Corporation, in its capacity as Agent under the DIP Credit Agreement. |
| **DIP Lenders:** | GE Capital Corporation and Bank of America N.A. |
| **DIP Facility:** | The total senior secured first priority DIP facility (the "DIP Facility") includes Loans to be advanced and made available to the Borrowers (the "Advances") under a revolving credit facility (the "DIP Loans") in the aggregate maximum principal amount of up to $60 million (the "DIP Commitment"). The DIP Facility and the Cash Collateral (as defined below) may be used only for working capital purposes of the Debtors, current interest and fees under the DIP Facility, repayment of Overadvances and Revolving Loans under (and as defined in) the Prepetition Credit Agreement, the payment of adequate protection payments to the Pre-Petition Agent and the Pre-Petition Lenders and the |

---

[4]     This summary is qualified, in its entirety by the provisions of the DIP Loan Agreement and the Interim Order. Unless otherwise set forth in this summary, capitalized terms used within this summary shall have the meanings ascribed to them in the DIP Loan Agreement.

allowed administrative costs and expenses of the Cases, in each case, solely in accordance with the Approved Budget and the Orders (each as defined below) incorporating the terms hereof.

Concurrently with the entry of the Interim Order (i) up to $5 million of DIP Loans shall deemed advanced and applied to a 1:1 conversion in respect of Overadvances (as defined in the Pre-Petition Credit Agreement ) made under the Pre-Petition Credit Agreement and (ii) all Prepetition Letters of Credit shall be deemed issued and outstanding under the DIP Credit Agreement.

An amount of up to approximately $55 million (the "Interim Advance") of the DIP Facility, approved by the Bankruptcy Court pursuant to the Interim Order (as defined below) shall be made available during the period from the date of entry of the Interim Order by the Bankruptcy Court through the date of entry of the Final Order (as defined below) by the Bankruptcy Court, the balance of which commitments shall be available only upon and after entry of the Final Order. Pending entry of the Final Order, the DIP Agent and the DIP Lenders shall be afforded all of the protections contained in the Interim Order.

The DIP Facility will be available if (and only if) the Interim Order or Final Order, as applicable, is in full force and effect. Subject to the terms and conditions of the DIP Loan Documents (as defined below), DIP Loans and Cash Collateral Disbursements will be made available following delivery by the Debtors of a loan or disbursement request which shall include a certification in the form set forth in the DIP Loan Agreement that: (i) no default or Event of Default has occurred and is continuing; (ii) all representations and warranties shall be true and correct as of the date of the loan request; and (iii) the loans being requested shall be used in accordance with the Approved Budget. The DIP, subject to the foregoing conditions and consistent with past ordinary course processing procedures, will be funded on the same Business Day if requested by 1:00 p.m. New York time, or on the first Business Day immediately following the date of such request if such request is made after 1:00 p.m. New York time.

| | |
|---|---|
| **Application of Collections; Cash Collateral Disbursements:** | The DIP Agent will have the benefit of all deposit account control agreements to which the Pre-Petition Agent is a |

party. All deposit accounts currently swept to the Pre-Petition Agent shall be swept daily to the DIP Agent during the term of the DIP facility, with the proceeds to be applied as follows:

*first*, to payment of costs and expenses Agent payable or reimbursable by the Debtors;

*second*, to payment of attorney costs of Lenders payable or reimbursable by the Debtors;

*third*, to payment of all accrued unpaid interest and fees under the DIP Facility;

*fourth*, to payment of principal of Prepetition Revolving Loans;

fifth, until the Prepetition Revolving Loans have been repaid in full, to a cash collateral account (the "Cash Collateral Account") maintained by the DIP Agent;

*sixth*, to payment of principal of the DIP Loans and reimbursement obligations in respect of letter of credit under the DIP Facility;

*seventh*, to payment of any other amounts owing under the DIP Facility.

provided, that any amounts deposited to the Cash Collateral Account shall be held by the DIP Agent and applied (i) upon the making of any additional DIP Loans hereunder, to payment of principal of the Prepetition Revolving Loans in an amount equal to such additional DIP Loans and (ii) upon repayment in full of the Prepetition Revolving Loans, to payment of principal of the principal in respect of the DIP Facility pursuant to clause *sixth* above.

| | |
|---|---|
| **Carve-Out:** | "Carve-Out" has the meaning set forth in paragraph 14 of the Interim Order. |
| **Interest Rate and Fees:** | Interest Rate:  "Base Rate" means, for any day, a rate per annum equal to the highest of (a) the rate last quoted by The Wall Street Journal as the "Prime Rate" in the United States or, if The Wall Street Journal ceases to quote such rate, the highest per annum interest rate published by the Federal Reserve Board in Federal Reserve Statistical Release H.15 (519) (Selected Interest Rates) as the "bank prime loan" rate |

or, if such rate is no longer quoted therein, any similar rate quoted therein(as determined by Agent) or any similar release by the Federal Reserve Board (as determined byAgent), (b) the sum of 3% per annum and the Federal Funds Rate, and (c) the sum of (x) LIBOR calculated for each such day based on an interest period of three months determined two (2) Business Days prior to such day (but for the avoidance of doubt, not less than two percent (2%) per annum), plus (y) 1.00%, in each instance, as of such day. Any change in the Base Rate due to a change in any of the foregoing shall be effective on the effective date of such change in the "Prime Rate", the "bank prime loan" rate, Federal Funds Rate or LIBOR for an interest period of three months.

Closing Fee: $250,000

Agent Fee: $100,000

LC Fee: 4.00% per annum on the face amount of each Letter of Credit

**Priority and Security:**

All obligations of the Debtors under the DIP Facility (the "DIP Obligations") will be:

(i) entitled to superpriority claim status under Section 364(c)(1) of the Bankruptcy Code with priority over all administrative expense claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code, including, without limitation, the pre-petition claims and adequate protection claims of the Pre-Petition Agent on behalf of the Pre-Petition Lenders and the Second Lien Agent (as defined below) on behalf of the Second Lien Creditors (as defined below), subject to the Carve-Out. The superpriority claims of the DIP Lenders may be repaid from any cash of the Debtors, including without limitation, Cash Collateral;

(ii) secured, pursuant to Section 364(d)(1) of the Bankruptcy Code, by valid, enforceable first priority, fully perfected security interests in and liens upon all of the Debtors' rights in property of the Debtors' estates as of the Petition Date, and all of the Debtors' rights in property acquired post-petition (including, without limitation, pursuant to the Final Order, estate causes of action under Chapter 5 of the Bankruptcy Code, together with the proceeds thereof and property received thereby (the "Avoidance Actions")),

whether now existing or hereafter acquired or arising (collectively, the "DIP Collateral"), subject and subordinate only to those liens approved by the DIP Agent that, under applicable law, are senior to, and have not been subordinated to, the liens of the Pre-Petition Agent under the Pre-Petition Loan Documents, but only to the extent that such liens are valid, enforceable and nonavoidable liens as of the Petition Date and liens permitted under the DIP Facility (collectively, "Permitted Priority Liens");

(iii) secured, pursuant to Section 364(c)(2) of the Bankruptcy Code, by a first priority, perfected lien on all of the Debtors' rights in property of the Debtors' estates as of the Petition Date that, as of the Petition Date, were unencumbered; subject to the Carve-Out (as defined below);

(iv) secured, pursuant to Section 364(c)(3) of the Bankruptcy Code, by a second priority, perfected lien on all of the Debtors' rights in property of the Debtors' estates as of the Petition Date that, as of the Petition Date, were subject to a Permitted Priority Lien, subject to the carve Out;

DIP Collateral will also include any and all rents, issues, products, offspring, proceeds and profits generated by any item of DIP Collateral, without the necessity of any further action of any kind or nature by the DIP Agent or the DIP Lenders in order to claim or perfect such rents, issues, products, offspring, proceeds and/or profits.

**Use of Cash Collateral:**

All cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all collateral pledged to the DIP Agent, constitute cash collateral, as contemplated by Section 363 of the Bankruptcy Code ("Cash Collateral"). Cash Collateral may be used only for working capital purposes of the Debtors, interest and fees under the DIP Facility, repayment of Prepetition Revolving Loans, the payment of adequate protection payments to the Pre-Petition Agent and Pre-Petition Lenders and the allowed costs and expenses of their Cases, in each case, solely in accordance with the Approved Budget and the Orders incorporating the terms hereof.

**Conditions Precedent:**

The closing of the DIP Facility and the Debtors' right to use Cash Collateral pursuant to the terms hereof will be subject to the satisfaction of all conditions precedent deemed necessary or appropriate by the DIP Agent and the Pre-

Petition Agent, as applicable, including but not limited to:

(i) Satisfactory completion of legal and collateral due diligence and transaction structuring, including due diligence concerning the Cases and the receipt of all required court approvals of the DIP Facility;

(ii) the DIP Agent shall have received sufficient commitments for the DIP Facility from the DIP Lenders;

(iii) the DIP Agent and the Pre-Petition Agent shall have received a cash forecast for the period from the Petition Date through the Scheduled Termination Date setting forth projected cash flows and disbursements, to be in form, scope and substance acceptable to the DIP Agent and the DIP Lenders and the Pre-Petition Agent and requisite Pre-Petition Lenders (the "Initial Approved Budget");

(iv) an interim debtor-in-possession financing/use of cash collateral order, in form and substance acceptable to the DIP Agent and the DIP Lenders and the Pre-Petition Agent and Pre-Petition Lenders, incorporating the terms hereof and containing such other provisions as the DIP Agent and DIP Lenders (as to the DIP Facility) and the Pre-Petition Agent and requisite Pre-Petition Lenders (as to the use of Cash Collateral) may require, shall have been entered by the Bankruptcy Court and shall not have been stayed, modified or appealed (the "Interim Order"). Notwithstanding anything to the contrary contained herein, funding of any Interim Advance shall be subject to entry of the Interim Order and funding of the balance of the commitments under the DIP Facility and continued authority to use Cash Collateral shall be subject to entry of a final debtor-in-possession financing/use of cash collateral order, in form and substance acceptable to the DIP Agent and DIP Lenders and the Pre-Petition Agent and requisite Pre-Petition Lenders, incorporating the terms hereof and containing such other provisions as the DIP Agent and DIP Lenders (as to the DIP Facility) and the Pre-Petition Agent and requisite Pre-Petition Lenders (as to the continued use of Cash Collateral) may require, which has not been stayed, modified or appealed and for which the appeal period has expired (the "Final Order" and, together with the Interim Order, collectively, the "Financing Orders");

(v) approval in advance by the DIP Agent and the Pre-

Petition Agent of all "first day" motions and orders;

(vi) the continued retention by the Debtors of FTI Consulting, Inc. (or another firm selected by Debtors and reasonably acceptable to the DIP Agent, the Pre-Petition Agent and the Majority DIP Lenders and requisite Pre-Petition Lenders) as chief restructuring officer of the Debtors ("CRO"), on terms and scope of authority acceptable to the DIP Agent, the Pre-Petition Agent, Majority DIP Lenders and requisite Pre-Petition Lenders, which CRO shall have financial and legal control and report to the Board of Directors, or similar body, of each Debtor;

(vii) the continued retention by the Debtors of Imperial Capital (or another investment bank selected by Debtors and reasonably acceptable to the DIP Agent, the Pre-Petition Agent and the Majority DIP Lenders and requisite Pre-Petition Lenders) as investment bank (the "Investment Bank"), on terms acceptable to the DIP Agent, the Pre-Petition Agent, Majority DIP Lenders and requisite Pre-Petition Lenders, to market the assets of the Debtors in connection with obtaining a Stalking Horse Bidder and assist the Debtors with obtaining Bankruptcy Court approval of such sale pursuant to Section 363 of the Bankruptcy Code;

(viii) the execution and delivery, in form and substance acceptable to the DIP Agent and the DIP Lenders, of a definitive credit agreement, related security agreement(s) (the "DIP Credit Agreement"), guarantees, pledge agreements, mortgages, and other agreements, opinions, instruments and documents required by the DIP Agent and the DIP Lenders (collectively, the "DIP Loan Documents");

(ix) reimbursement in full in cash of the professional fees, costs and expenses of the Pre-Petition Agent, the Pre-Petition Lenders, the DIP Agent and the DIP Lenders; and

(x) such other deliverables as the DIP Agent and the Pre-Petition Agent may require.

Modifications of the Finance Orders shall require approval of the DIP Agent, the Majority DIP Lenders, the Pre-Petition Agent and requisite Pre-Petition Lenders.

**Representations and Warranties:**   The DIP Loan Documents contain representations and warranties substantially consistent with those made by the Debtors under the Pre-Petition Credit Agreement and the

other Pre-Petition Loan Documents, modified as necessary to reflect the filing of the Cases and the Debtors' financial condition, and with such other modifications and such other representations and warranties as the DIP Agent may require.

**Sale Process Covenants:**  The Debtors must take the following actions (or obtain the following approvals, as applicable) as soon as possible, but not later than the following:

(i) No later than 14 days after the Petition Date, file a motion under Section 363 of the Bankruptcy Code ("Sale Motion") to sell all or substantially all of their respective assets in one transaction or a series of transactions to a purchaser or purchasers acceptable to the Pre-Petition Agent and requisite Pre-Petition Lenders (the "Stalking Horse Bidder") under an asset purchase agreement, in form and substance acceptable to the Pre-Petition Agent and requisite Pre-Petition Lenders, subject to the receipt of "higher and better" bids (the "Approved Sale"), together with a motion ("Bid Procedures Motion") for approval of bidding procedures (the "Bidding Procedures"), in each case, in form and substance acceptable to the Pre-Petition Agent and requisite Pre-Petition Lenders. The Stalking Horse Bidder may be the Pre-Petition Agent or its designee pursuant to a credit bid, which credit bid right shall be expressly reserved for the benefit of the Pre-Petition Agent in the Financing Orders, whether pursuant to an Auction (as defined below) or plan of reorganization under Section 1129 of the Bankruptcy Code;

(ii) obtain Bankruptcy Court approval, pursuant to an order (the "Bidding Procedures Order") in form and substance acceptable to the Pre-Petition Agent, of the Bidding Procedures no later than 28 days after filing the Sale Motion and the Bid Procedures Motion;

(iii) obtain and executed letter of intent from the prospective purchaser no later than no later than 45 days after the Petition Date;

(iv) conduct, subject to Bankruptcy Court Approval, an auction in accordance with the Bidding Procedures (the "Auction") no later than 76 days after the Petition Date;

(v) obtain Bankruptcy Court approval, in form and substance acceptable to the Pre-Petition Agent and requisite Pre-Petition Lenders, of the Approved Sale to the successful

bidder (the "Approved Sale Order") no later than 5 business days after completion of the Auction; and

(vi) consummate the Approved Sale by no later than 87 days after the Petition Date.

Neither the Bidding Procedures or the Approved Sale Order nor any of the other approvals described above may be amended or otherwise modified without the consent of the DIP Agent, the Majority DIP Lenders, the Pre-Petition Agent and requisite Pre-Petition Lenders.

**Events of Default:**                "Events of Default" include the occurrence of any of the following:

(i) The Interim Order at any time ceases to be in full force and effect, or shall be vacated, reversed or stayed, or modified or amended without the prior written consent of the DIP Agent, the Majority DIP Lenders, the Pre-Petition Agent, and the requisite Pre-Petition Lenders;

(ii) The Final Order is not entered within 25 days after the entry of the Interim Order or at any time ceases to be in full force and effect, or shall be vacated, reversed or stayed, or modified or amended without the prior written consent of the DIP Agent, the Majority DIP Lenders, the Pre-Petition Agent, and the requisite Pre-Petition Lenders;

(iii) Breach by any Debtor of (a) covenant regarding the use of DIP Facility proceeds in accordance with the Approved Budget, (b) any Sale Process Covenant, (c) the Variance Covenant or (d) any other covenant or agreement contained in the DIP Loan Documents or in the Orders, subject, in the case of the foregoing clause (d), to a grace period to be agreed;

(iv) Any of the Cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; a Chapter 11 Trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those expressly set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Cases; or any other superpriority claim (other than the Carve-Out (as defined below)) or grant of any other lien (including any adequate protection lien) which is pari passu with or senior to the claims and liens of the DIP Agent or the Pre-Petition Agent shall be granted in any of the Cases;

(v) Other than payments authorized by the Bankruptcy Court and which are set forth in the Approved Budget to the extent authorized by one or more "first day" or other orders satisfactory to the DIP Agent, any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables (including without limitation, reclamation claims);

(vi) The Bankruptcy Court enters an order granting relief from the automatic stay to the holder or holders of any lien to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Debtor which have an aggregate value in excess of $50,000;

(vii) The Termination Date (as defined below) occurs;

(viii) An "Event of Default" under the DIP Loan Documents occurs (such "Events of Default" to include certain events of default under the Pre-Petition Loan Documents (other than events of default arising solely as a result of the filing of the Cases or the Debtors' financial condition), and such other events of default as the DIP Agent and DIP Lenders shall require;

(ix) The filing by the Debtors of any plan of reorganization without the prior written consent of the DIP Agent, the Pre-Petition Agent, the Majority DIP Lenders and a majority of the Pre-Petition Lenders or the termination of the Debtors' "exclusive period" under Section 1121 of the Bankruptcy Code for the filing of a plan of reorganization;

(x) Any Debtor petitions the Bankruptcy court to obtain additional financing pari passu or senior to the DIP Facility (other than indebtedness permitted to be incurred under the DIP Loan Documents and the DIP Financing Orders);

(xi) (A) The Debtors engage in or support any challenge to the validity, perfection, priority, extent or enforceability of the DIP Facility or the Pre-Petition Loan Documents or the liens on or security interest in the assets of the Debtors securing the DIP Obligations or the Pre-Petition Obligations, including without limitation seeking to equitably subordinate or avoid the liens securing the Pre-Petition Obligations or (B) the Debtors engage in or support any investigation or assert any claims or causes of action (or directly or indirectly support assertion of the same) against the DIP Agent, the

DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders; provided, however, that it shall not constitute an Event of Default if the Debtors provide information with respect to the Pre-Petition Loan Documents to a party in interest or is compelled to provide information by an Order of the Bankruptcy Court and provides prior written notice to the DIP Agent and the DIP Lenders and the Pre-Petition Agent and the Pre-Petition Lenders of any intention or requirement to do so;

(xii)  Any person obtains a Section 506(a) judgment or similar determination with respect to the Pre-Petition Obligations that is unacceptable to the Pre-Petition Agent and requisite Pre-Petition Lenders;

(xiii) Entry of an order by the Bankruptcy Court authorizing or directing payment of any claim or claims under Section 506(c) or 552(b) of the Bankruptcy Code against or with respect to any of the DIP Collateral;

(xiv) The consummation of a sale of any material portion of the Debtors' assets other than pursuant to an Approved Sale;

(xv)  The allowance of any claim or claims under Section 546(c) or 503(b)(9) of the Bankruptcy Code that is not contemplated in the Approved Budget or is otherwise unacceptable to the DIP Agent and Majority DIP Lenders; or

(xvi) Such other events of default as the DIP Agent may require.

Upon the occurrence and during the continuance of any Event of Default beyond the applicable grace period (if any) set forth above, upon the direction of the Majority DIP Lenders, the DIP Agent may accelerate the DIP Obligations and, thereafter, may take all or any of the following actions without further order of or application to the Bankruptcy Court, provided that in the case of the enforcement of liens or other remedies with respect to collateral pursuant to clause (2) below, the DIP Agent will provide the Debtors (with a copy to any counsel for the Creditors' Committee (as defined below) appointed in the Cases and to the United States Trustee) with three (3) business days prior written notice during which time any such party must file a pleading seeking an emergency hearing in opposition to the DIP Agent's exercise of its rights and remedies and provided further, that in any hearing following such notice, the only

issue that may be raised by any party in opposition to the actions proposed or available to be taken by the DIP Agent will be whether, in fact, an Event of Default has occurred and is continuing:

(1) declare the principal of and accrued interest on the outstanding borrowings to be immediately due and payable and terminate, as applicable, any further commitments under the DIP Facility and/or terminate, as applicable, the right of the Debtors to use Cash Collateral; and

(2) charge the default rate of interest under the DIP Facility and take any other action or exercise any other right or remedy (including without limitation, with respect to the liens in favor of the DIP Agent on behalf of the DIP Lenders) permitted under the DIP Loan Documents or applicable law.

**Maturity/Termination Date:**    The DIP Facility and the Debtors' right to use Cash Collateral (as applicable) will automatically terminate without further notice or court proceedings on the earlier of (i) 120 days after the Petition Date (the "Scheduled Maturity Date"); (ii) the date of acceleration of any outstanding borrowings under the DIP Facility pursuant to an Event of Default; (iii) the first business day on which the Interim Order expires by its terms or is terminated, unless the Final Order has been entered and become effective prior thereto; (iv) conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Agent and Majority DIP Lenders; (v) dismissal of any of the Cases, unless otherwise consented to in writing by the DIP Agent and Majority DIP Lender; (vi) the date of consummation of the Approved Sale; and (vii) the effective date of any Debtors' plan of reorganization confirmed in the Cases (the "Termination Date"), unless extended, as to the DIP Facility, with the prior written consent of the DIP Agent and DIP Lenders and, as to the use of Cash Collateral, the Pre-Petition Agent and requisite Pre-Petition Lenders.

**Adequate Protection:**    The Pre-Petition Agent will receive the following as adequate protection for the benefit of the Pre-Petition Lenders:

(i) a superpriority claim under Section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims now existing or after

arising, subject to the Carve-Out, provided, however, that such superpriority claim shall be junior and subject to the superpriority claim of the DIP Agent for the benefit of the DIP Lenders in respect of the DIP Facility;

(ii) a second priority, valid, enforceable, fully perfected security interest in and replacement lien on all of the Debtors' rights in property of the Debtors' estates as of the Petition Date and all of the Debtors' rights in property acquired post-petition, whether now existing or hereafter acquired, subject and subordinate only to (a) the liens of the DIP Agent for the benefit of the DIP Lenders in respect of the DIP Facility, (b) Permitted Priority Liens and (c) the Carve-Out;

(iii) the reasonable, documented fees, costs and expenses incurred or accrued by the Pre-Petition Agent (the foregoing to include all unpaid prepetition fees, costs and expenses) in connection with any and all aspects of the Debtors' Cases, and including the reasonable fees and expenses of legal counsel (including Sidley Austin LLP) and other professionals, hired by or on behalf of the Pre-Petition Agent; and

(iv) (a) upon closing of the DIP Facility, payment of all accrued and unpaid non-default interest and fees then owing under the Pre-Petition Credit Agreement, and (b) the current monthly payment of post-petition non-default interest (at the Base Rate plus the Applicable Margin) (each term as defined in the Pre-Petition Credit Agreement) and fees as and when due and payable under the Pre-Petition Credit Agreement; provided, however, that (x) the adequate protection claims and liens described in the preceding clauses (i) and (ii) shall be granted only to the extent of any diminution in the value of any Cash Collateral or other collateral arising as a result of (A) the use, sale, or lease of Cash Collateral or other collateral, (B) the granting of priming liens to secure the DIP Facility or (C) the imposition of the automatic stay, and (y) the adequate protection claims and liens described in the preceding clause (ii) shall not attach to any Avoidance Actions until entry of the Final Order.

The Second Lien Agent (as defined in the Intercreditor Agreement) will receive, as adequate protection for the benefit of the Second Lien Creditors (as defined in the Intercreditor Agreement), a valid, enforceable, fully perfected replacement lien on all of the Debtors' rights in

property of the Debtors' estates as of the Petition Date and all of the Debtors' rights in property acquired post-petition, whether now existing or hereafter acquired, subject and subordinate only to (i) the liens of the DIP Agent for the benefit of the DIP Lenders in respect of the DIP Facility, (ii) the liens of the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, (iii) the adequate protection replacement liens in favor of the Pre-Petition Agent for the benefit of the Pre-Petition Lenders, and (iv) any Permitted Priority Liens and (v) the Carve-Out; provided, however, that the adequate protection liens described in this paragraph shall be granted only to the extent of any diminution in the value of any Cash Collateral or other collateral arising as a result of the use, sale, or lease of Cash Collateral or other collateral or as a result of the imposition of the automatic stay, and (y) shall not attach to any Avoidance Actions unless the DIP Agent and Pre-Petition Agent (on account of its replacement liens) shall have received priority liens on Avoidance Actions, as described herein.

The foregoing adequate protection liens shall be deemed automatically perfected as of the Petition Date without further action, although if the DIP Agent and/or the Pre-Petition Agent determine to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings and the automatic stay shall be lifted to allow such filings.

**Carveout:** See Paragraph 14 of the Interim Order.

**Section 506(c) Waiver:** The Final Order includes a ruling that, except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any collateral pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent and the Pre-Petition Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders.

**Section 552(b):** The DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders will be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation

in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the collateral under Section 552(b) of the Bankruptcy Code.

**Expenses:**    The reasonable, documented fees, costs and expenses incurred or accrued by the DIP Agent (the foregoing to include all unpaid prepetition fees, costs and expenses incurred by the DIP Agent in connection with the DIP Facility) in connection with any and all aspects of the Debtors' Cases, including, without limitation, the reasonable fees and expenses of legal counsel (including Sidley Austin LLP) and other professionals, hired by or on behalf of the DIP Agent, will be payable by the Debtors under the DIP Facility on a monthly basis, promptly upon submission by such professional of a summary invoice setting forth such fees, costs and expenses.

**Miscellaneous:**    This summary of terms and conditions does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions which are contained in definitive credit documentation for the DIP Facility.

***Local Rule 4001-2***

19.    Rule 4001-2 of the Local Rules requires that certain provisions contained in the DIP Loan Agreement be highlighted and that the Debtors provide justification for the inclusion of such highlighted provision(s).

20.    Local Rule 4001-2(a)(i) provides:

Provisions to be Highlighted. All Financing Motions must (a) recite whether the proposed form of order and/or underlying cash collateral stipulation or loan agreement contains any provision of the type indicated below, (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement and (c) justify the inclusion of such provision:

(A)    Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (i.e., clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security

interest by virtue of its prepetition security agreement or applicable law);

(B)    Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters;

(C)    Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c);

(D)    Provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549;

(E)    Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b);

(F)    Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve out; and

(G)    Provisions that prime any secured lien without the consent of that lienor.

21.    The Debtors identify and discuss the following provisions of the DIP Loan Agreement and Interim Order in accordance with Local Rule 4001-2 in the context and circumstances of these cases.

**(ii)    Local Rule 4001-2(a)(i)(B)**

22.    Local Rule 4001-2(a)(i)(B) is not an issue for the Committee, which reserves its rights in accordance with the provision of this rule. See paragraph 15. The estate or other parties in interest, however, will be bound respect to the validity, perfection or amount of

the secured creditor's prepetition lien (paragraph 7) or the waiver of claims against the secured

creditor (paragraph 31) without first giving parties in interest other than the Committee at least

seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least

sixty (60) days from the date of its formation to investigate such matters. Id. The Debtors

believe that the Committee will be capable of representing the interests of all parties for purposes

of the proposed findings.

**(ii)      Local Rule 4001-2(a)(i)(C)**

23.      Local Rule 4001-2(a)(i)(C) requires explicit disclosure of provisions that

constitute a waiver, without notice, of the estates' rights under Bankruptcy Code Section 506(c).

Paragraph 19 of the Interim Order provides in part that upon the entry of the Final Order, the

Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim,

under section 506(c) of the Bankruptcy Code.  Because this waiver only will be effective upon

entry of the Final Order and to the extent such order so provides, the Debtors respectfully submit

that parties in interest will have an opportunity to be heard and, as such, the waiver will not be

"without notice."

**(iii)     Local Rule 4001-2(a)(i)(D)**

24.      Local Rule 4001-2(a)(i)(D) requires disclosure of provisions under which

the Debtors immediately grant the prepetition secured lenders liens on the Debtors' claims or

causes of action under 11 U.S.C. §§ 544, 545, 547, 548 and 549 (the "Avoidance Actions").

Paragraph 10 of the Interim Order provides the DIP Lenders with liens on Avoidance Actions,

subject to the entry of the Final Order.

25.      This provision, as it relates to the granting of a security interest and lien on

the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code, is subject to the

approval of the court in the Final Order.  As such, the Debtors respectfully submit that

prepetition secured lenders are not being granted liens on the Avoidance Actions "immediately" and parties in interest will have an opportunity to be heard.

**(iv)    Local Rule 4001-2(a)(i)(E)**

26.    Pursuant to Local Rule 4001-2(a)(i)(E), a movant must describe provisions of the proposed debtor-in-possession facility that deem prepetition secured debt to constitute postpetition debt. See Del. Bankr. L.R. 4001-2(a)(i)(E). Paragraph 3 of the Interim Order provides that receipts from cash collateral will be used first to pay down the Debtors' obligations under the Prepetition First Lien Credit Facility and new advances will be secured by newly-created assets, such that the DIP Credit Facility will effectively "roll over" the debt payable under the First Lien Credit Facility. The Debtors believe that it would be inappropriate to effectively "term out" a revolving facility with the dynamic pool of assets that secure such a facility and that the appropriate form of adequate protection to holders of debt under the First Lien Credit Facility is to reduce that debt as the proceeds of the underlying assets are received.

**(v)    Local Rule 4001-2(a)(i)(F)**

27.    Pursuant to Local Rule 4001-2(a)(i)(F), a movant must describe provisions of the proposed debtor-in-possession facility that provide disparate treatment for professionals retained by a creditors' committee with respect to a professional fee carve-out. Paragraph 14 of the Interim Order provides a professional fee carve-out for the Debtors' professionals. The Interim Order does not address a carve-out for any professional fees of any professionals the creditors' committee may retain to the extent a creditors' committee is appointed in these cases. The Debtors understand that the DIP Lenders will address this issue if and when a creditors' committee is appointed.

**(vi)    Local Rule 4001-2(a)(i)(G)**

28.     Pursuant to Local Rule 4001-2(a)(i)(G), a movant must describe provisions of the proposed debtor-in-possession facility that contemplates a priming of any secured lien without the consent of that lienor.  See Del. Bankr. L.R. 4001-2(a)(i)(G).

29.     The DIP Credit Facility is "priming" facility inasmuch as the DIP Credit Facility will be secured by first priority, senior, priming, perfected lien on and security interest in all of the Debtors' right, title and interest in, to and under the DIP Collateral (as defined in the Interim Order) that is subject to or encumbered by a validly perfected, unavoidable security interest or lien on the Petition Date or subsequently perfected thereafter.   The Prepetition First Lien Agent and the Prepetition Second Lien Agent have consented, or are expected to consent, to the terms of the DIP Loan Agreement and the Interim and Final Orders, including the priming of their liens.

**(vii)    Additional Provisions**

30.     In addition to the provisions above described as required by the Local Rules, the DIP Loan Agreement and the Interim Order contain certain other provisions that the Debtors believe the Court likely would want the Debtors to highlight, even though these provisions are noted in the term sheet description of the DIP Facility set forth above.  In particular, the DIP Loan Agreement contains various sale related "milestones" that the Debtors must meet throughout their chapter 11 cases, and failure to meet such milestones constitutes an event of default under the DIP Loan Agreement.

***Bankruptcy Code Provides a Basis for the Relief Requested***

31.     Bankruptcy Code Section 364(c) provides:

If the [debtor-in-possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1)    with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

32.    Bankruptcy Code Section 364(d)(1) provides:

The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
(A)    the [debtor-in-possession] is unable to obtain such credit otherwise; and
(B)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d).

33.    Bankruptcy Rule 4001(c)(2) provides, in relevant part:

The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2).

34.    Bankruptcy Rule 4001(d) provides, in relevant part, that (i) a motion for approval to modify or terminate the automatic stay shall be served on any committee appointed pursuant to Bankruptcy Code Section 1102, on the creditors included on the list filed under Bankruptcy Rule 1007(d), and on such other entities as the court may direct, and (ii) objections may be filed within 14 days of the mailing of the notice of the motion and the time for filing objections thereto.  See Fed. R. Bankr, P. 4001(1) - (2).

*The DIP Credit Agreement*

35.    As set forth above, based on discussions with potential lenders other than

the DIP Lenders, the Debtors were unable to obtain postpetition financing on an unsecured basis

in an amount, and within the timeframe, that the Debtors' current liquidity situation mandated.

The Debtors negotiated the DIP Loan Facility at arm's-length and have determined, in the

exercise of their business judgment, that it is the best proposal under the circumstances.

Provided that this judgment does not run afoul of the provisions of, and policies underlying, the

Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its

business judgment.  See, e.g., In re Ames Dept. Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y.

1990) (courts have discretion under Bankruptcy Code § 364 to permit debtors to exercise

reasonable business judgment so long as (i) the terms of the financing agreement do not

"leverage the bankruptcy process and powers" and (ii) the financing agreement's purpose is

primarily to benefit the estate, and not a party in interest).

36.    The DIP Loan Facility provides additional liquidity to the Debtors

sufficient to enable them, inter alia, to (i) minimize disruption to their business and operations,

(ii) preserve and maximize the value of their estates for the benefit of all creditors, (iii) avoid

immediate and irreparable harm to their businesses, their creditors and their employees, and their

assets and (iv) permit the Debtors to explore a potential sale transaction for the purpose of

maximizing the value of the Debtors' estates for the benefit of all the Debtors' stakeholders.

Without the financing provided under the DIP Loan Facility, the Debtors will not be able to meet

the operating expenses necessary to the Debtors' ordinary course operations, they will suffer

irreparable harm as a result of the loss of any potential going-concern value the Debtors' may

possess.

37.    The Debtors believe that the terms and conditions of the DIP Loan Facility are fair and reasonable under the circumstances.  Accordingly, the Debtors request that the DIP Lenders be afforded the benefits of Bankruptcy Code Section 364(e) in respect of the DIP Loan Facility. Based upon the foregoing, the Debtors respectfully request that the Court approve the DIP Loan Facility in accordance with the terms set forth in the Interim Order and the DIP Loan Agreement.

*Use of Cash Collateral*

38.    In connection with their need for debtor-in-possession financing, the Debtors also require the use of Cash Collateral.  Bankruptcy Code Section 363(c)(2) provides that the Debtors may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

39.    The Prepetition First Lien Lenders and the Prepetition Second Lien Lenders have consented to the Debtors' use of Cash Collateral on the terms and conditions set forth in the Interim Order and the DIP Loan Agreement.  Based upon the foregoing, the Debtors respectfully request that the Court authorize the Debtors to use the Cash Collateral in accordance with the terms set forth in the Interim and Final Orders.

*Modification of the Automatic Stay*

40.    Bankruptcy Code Section 362 provides for an automatic stay upon the filing of a bankruptcy petition. The proposed Interim Order contemplates the modification of the automatic stay (to the extent applicable), to the extent necessary to permit the (i) Debtors and (ii) DIP Agent to implement the terms of the Interim Order.Stay modification provisions of this type are standard features of postpetition debtor-in-possession financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances.  Accordingly, the

Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order and DIP Loan Agreement.

*Interim Approval of the DIP Facility*

41.    As set forth above, Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Bankruptcy Code Section 363 or to obtain credit under Bankruptcy Code Section 364 may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and to authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

42.    The Debtors respectfully request that the Court conduct a preliminary hearing on the Motion and authorize the Debtors from the entry of the Interim Order until the Final Hearing to obtain credit under the terms contained in the DIP Loan Agreement and to utilize Cash Collateral.

*Establishing Notice Procedures and Scheduling Final Hearing*

43.    The Debtors respectfully request that the Court schedule the Final Hearing and authorize them to mail copies of the Motion and the signed Interim Order, which fixes the time, date and manner for the filing of objections, to (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (c) counsel to the DIP Agent; (d) the Securities and Exchange Commission; (e) counsel to the DIP Notes Agent; (f) counsel to the Revolving DIP Agent; (g) the Prepetition Revolving Agent; (h) counsel to that certain ad hoc committee of holders of the Notes; and (i) any other parties requesting such notice.  The Debtors request that the Court approve such notice of the Final Hearing, including without limitation,

notice[5] that the Debtors will seek approval at the Final Hearing of (i) a waiver of rights under Bankruptcy Code Section 506(c) and (ii) the granting of liens on the proceeds of the Debtors' avoidance actions under chapter 5 of the Bankruptcy Code.

## Notice

44.     Notice of this Motion shall be provided to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' 30 largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (c) counsel to the Debtors' first priority prepetition and proposed postpetition lenders; and (d) counsel to the agent for the Debtors' second priority lenders.  As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

---

[5]     Local Rule 2002-1(b) provides that "[i]n chapter 11 cases, all motions . . . shall be served only upon counsel for the debtor, the United States Trustee, counsel for all official committees, all parties who file a request for service of notices under Fed. R. Bankr. P. 2002(i) and all parties whose rights are affected by the motion.  If an official unsecured creditors' committee has not been appointed, service shall be made on the 30 largest unsecured creditors in the case in lieu of the creditors' committee."

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order substantially in the form attached hereto as <u>Exhibit A</u>:  (a) granting the relief sought herein on an interim basis; (b) scheduling the Final Hearing; and (c) granting to the Debtors such other and further relief as the Court may deem proper

Dated:    April 2, 2012          Respectfully submitted,
Wilmington, Delaware


Laura Davis Jones (No. 2436)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street
17th Floor
Wilmington, Delaware 19899
Telephone:  (302) 652-4100

-and-

Tobias S. Keller
JONES DAY
555 California Street
26th Floor
San Francisco, California 94104
Telephone:  (415) 626-3939

Jeffrey B. Ellman
Brett J. Berlin
JONES DAY
1480 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Telephone:  (404) 581-3939

PROPOSED    ATTORNEYS    FOR    DEBTORS AND DEBTORS IN POSSESSION