**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| AFA INVESTMENT INC., *et al.*,[1] | : | Case No. 12-11127 (MFW) |
| Debtors. | : | Jointly Administered |
| | : | **Hearing Date: July 25, 2012 at 11:30 a.m. (ET)**<br>**Objection Deadline: July 20, 2012 at 4:00 p.m. (ET)** |

# MOTION OF DEBTORS FOR AN ORDER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND TO SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors (collectively, the "Debtors") hereby move the Court, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for an order: (a) extending the period (the "Exclusive Filing Period") during which the Debtors have the exclusive right to file a chapter 11 plan (any such plan, a "Plan"); and (b) extending the period during which the Debtors have the exclusive right to solicit acceptances of a Plan (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods"). In support of this Motion, the Debtors respectfully represent as follows:

## Background

*General Background*

1. On April 2, 2012 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. By an order of the Court (Docket No. 35),

1 The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): AFA Investment Inc. (0331); American Foodservice Corporation (1780); American Fresh Foods, Inc. (7389); American Fresh Foods, L.P. (7302); AFA Foods, Inc. (0429); American Fresh Foods, LLC (7301); Fairbank Reconstruction Corporation (2405); American Foodservice Investment Company, LLC (9525); and United Food Group LLC (7584). The address of each of the Debtors is 860 First Avenue, Suite 9A, King of Prussia, Pennsylvania 19406.

the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors are among the largest ground beef processing enterprises in the United States. At their active facilities, the Debtors produce case-ready ground beef and individually quick frozen hamburger patties for sale to customers across a national retail and foodservice market. Annually, the Debtors have processed more than 500 million pounds of ground beef products, which are distributed primarily to restaurants and retail grocery stores across the United States. As of the Petition Date, the Debtors operated beef processing facilities in California, Georgia, New York, Pennsylvania and Texas.[2] The Debtors maintain their headquarters in King of Prussia, Pennsylvania.

4. As of the Petition Date, the Debtors employed approximately 850 full time employees. As of December 31, 2011, the Debtors' books and records reflected approximately $958 million in annual revenues on a consolidated basis. As of February 29, 2012, on a consolidated basis, the Debtors' books and records reflected approximately $219 million in assets and $197 million in liabilities.

5. On April 12, 2012, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors'

2 Following the Petition Date, the Debtors suspended operations at their facilities in Vernon, California (near Los Angeles) (the "California Facility") and Thomasville, Georgia (the "Georgia Facility"). On June 26, 2012, the Court entered orders (Docket Nos. 393 and 394) (respectively, the "California Assets Sale Order" and the "Georgia Assets Sale Order") approving the separate sales of the Debtors' assets associated with these facilities. As described below, the Debtors are continuing to pursue the sale of assets relating to their facilities in Texas, Pennsylvania and New York (respectively, the "New York Facility," the "Texas Facility" and the "Pennsylvania Facility").

Committee") in these chapter 11 cases, pursuant to section 1102 of the Bankruptcy Code (Docket No. 100).

*The Sale Process*

6. The Debtors commenced these chapter 11 cases to pursue an expeditious sale of substantially all of their assets to maximize value for their estates and stakeholders (the "Sale Process"). To that end, on April 16, 2012, the Debtors filed a motion (Docket No. 111) (the "Sale Motion") seeking approval of certain Sale Procedures[3] to conduct the Sale Process. The Debtors proposed Sale Procedures that would provide them with the flexibility to sell their Assets in one or more lots, free and clear of all liens, claims, interests and encumbrances. On May 9, 2012, the Court entered an order (Docket No. 242) (the "Sale Procedures Order") approving the Sale Procedures.

7. With the assistance of their Court-approved investment bankers and other professional advisors, the Debtors have marketed their assets and pursued asset sales through the Sale Process. At all times, the Debtors have worked closely with the Consultation Parties in implementing the Sale Procedures. Ultimately, based on the expressions of interest received and after discussions with the Consultation Parties, the Debtors determined that the best approach to maximize value was to pursue separate sales of assets for each of the Debtors' five facilities.

8. Following the entry of the California Assets Sale Order and the Georgia Assets Sale Order on June 26, 2012, the Debtors have closed the separate sales of assets relating to the California Facility and the Georgia Facility. Sales of assets relating to the Pennsylvania Facility and the Texas Facility are expected to be presented to the Court for approval on July 12, 2012. The Debtors are continuing to market the assets of the New York Facility for sale.

---

3 Capitalized terms not otherwise defined herein have the meanings given to them in the Sale Motion.

**Jurisdiction**

9. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

**Relief Requested**

10. By this Motion, the Debtors seek an order: (a) extending the Exclusive Filing Period by 90 days, through and including October 29, 2012; and (b) extending the Exclusive Solicitation Period through and including December 27, 2012 (approximately 60 days after the expiration of the Exclusive Filing Period, as extended).

**Legal Basis for Relief Requested**

*The Court May Extend the Exclusive Periods for Cause*

11. Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a chapter 11 plan in the first 120 days following the commencement of a chapter 11 case. See 11 U.S.C. § 1121(b). If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code grants an additional 60 days during which the debtor may solicit acceptances of that plan and no other party in interest may file a competing plan. See 11 U.S.C. § 1121(c)(3).

12. Section 1121(d) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest . . . and after notice and a hearing, ***the court may for cause*** reduce or ***increase the 120-day period or the 180-day period referred to in this section***." 11 U.S.C. § 1121(d)(1) (emphasis added). The 120-day period, however, "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date." 11 U.S.C. § 1121(d)(2).

13. The ultimate decision to extend a debtor's Exclusive Periods rests within the discretion of the Bankruptcy Court. See First American Bank of N.Y. v. S.W. Gloves and Safety Equip., Inc., 64 B.R. 963, 965-66 (D. Del. 1986) (finding the authority to extend debtor's exclusivity within the discretion of the bankruptcy court).

14. Although the Bankruptcy Code does not define "cause," courts rely on various factors to determine whether cause exists to extend a debtor's Exclusive Periods. These factors include: (a) the size and complexity of the debtor's case; (b) the existence of good faith progress towards reorganization; (c) a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtor's] reorganization demands;" (d) whether the debtor has demonstrated reasonable prospects for filing a viable plan; and (e) whether the debtor has made progress in negotiations with creditors. See In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing the foregoing factors); In re Grand Traverse Dev. Co. Ltd. Partners, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (listing some of the foregoing factors); In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (listing some of the foregoing factors).

*Cause Exists to Extend the Debtors' Exclusive Periods*

15. Under the circumstances of these cases, "cause" exists to warrant the requested extension of the Exclusive Periods. Among other things, cause for the proposed extension is demonstrated by: (a) the size and complexity of these cases; (b) the Debtors' good faith progress toward a Plan; (c) the Debtors' negotiations with creditors to resolve the issues necessary to confirm and consummate a Plan; and (d) the absence of undue pressure on creditors as an ulterior motive of the request.

16. As described above, the Debtors have devoted significant resources in the first three months of these cases on pursing an expeditious Sale Process to maximize value for

their estates and stakeholders by selling substantially all of their assets. This process has involved multiple sales of individual facilities, effectively requiring the Debtors to manage separate sales for each of the Debtors' five primary operating locations. At the same time, the Debtors also have devoted resources to managing the Debtors' day-to-day business operations pending these sales – a substantial task by itself – as well as addressing numerous pressing matters required to complete the smooth transition to chapter 11 and to administer these cases.

17. The Debtors believe that this substantial effort to date has been worthwhile and that the Sale Process has worked to maximize value for stakeholders. Sale proceeds are expected to be sufficient to pay the Debtors' obligations under the DIP Facility and the prepetition first lien credit facility in full. Nevertheless, sale proceeds are not anticipated to be sufficient to pay in full all of the junior secured claims under the prepetition second lien credit facility.

18. From the outset, the Debtors have been forthright about the significant challenges they confront in these cases, particularly given that the Debtors may not be able to pay all secured claims in full and are subject to a significant amount of prepetition priority claims asserted under section 503(b)(9) of the Bankruptcy Code ("Twenty-Day Claims").[4] Despite the challenges, the Debtors believe that a feasible Plan can be confirmed and implemented in these cases. However, the development of such a Plan likely will require the negotiation and resolution of various issues among the primary stakeholders in these cases, including the

4 Although postpetition administrative claims have been funded and paid in these cases, funding for the Twenty-Day Claims has not been established to date. To assist in better understanding the universe of Twenty-Day Claims in these cases, the Debtors obtained an order of the Court establishing procedures for trade creditors to assert Twenty-Day Claims (Docket No. 236) (the "503(b)(9) Order"). The 503(b)(9) Order established, among other things, (a) a bar date of June 11, 2012 for the assertion of Twenty-Day Claims and (b) a process for the Debtors to report to the Court and interested parties on the Debtors' progress in reconciling those claims against the Debtors' books and records.

Creditors' Committee and the Debtors' prepetition first lien lenders, prepetition second lien lenders and postpetition lenders (collectively with the Debtors, the "Key Parties").

19. With the Debtors' encouragement, meaningful discussions among the Key Parties already have begun and are ongoing. Now that the Sale Process is nearing completion, the Debtors believe that these discussions may intensify. The parties are now in a position to better understand the outcome of the Sale Process, which will assist them in negotiating appropriate resolutions of open issues.

20. The Debtors submit that the negotiations to date have occurred in good faith and have been productive, and that a successful resolution to these cases through a Plan is both possible and in the best interests of creditors and parties in interest. Nevertheless, much work remains, and more time is needed to pursue the agreements that may serve as the foundation to a Plan. The Debtors submit that extending the Exclusive Periods would promote these discussions and the successful conclusion of these cases.

21. For all of these reasons, the Debtors submit that the extension of the Exclusive Periods proposed herein is appropriate and should be granted.

**Notice**

22. Notice of this Motion shall be provided to: (a) the U.S. Trustee, (b) counsel to the Creditors' Committee, (c) counsel to the agent for the Debtors' prepetition first lien lenders and postpetition lenders, (d) counsel to the agent for the Debtors' prepetition second lien lenders and (e) all entities that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice of this Motion is required.

WHEREFORE, the Debtors respectfully request that the Court: (a) enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein; and (b) grant such other and further relief to the Debtors as the Court may deem proper.

[*Remainder of page intentionally left blank*]

Dated: July 11, 2012
Wilmington, Delaware

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
Peter J. Keane (Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ljones@pszjlaw.com
tcairns@pszjlaw.com
pkeane@pszjlaw.com

-and-

Tobias S. Keller
JONES DAY
555 California Street
26th Floor
San Francisco, California 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
E-mail: tkeller@jonesday.com

Jeffrey B. Ellman
Brett J. Berlin
JONES DAY
1480 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
E-mail: jbellman@jonesday.com
bjberlin@jonesday.com

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION