## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re                                          :    Chapter 11
                                               :
AFA INVESTMENT INC., *et al.*,[1]              :    Case No. 12-11127 (MFW)
                                               :
            Debtors.                           :    Jointly Administered
                                               :
                                               :    **Re: Docket Nos. 1393, 1394, 1433**
-------------------------------------------------------------x

## DECLARATION OF DAVID J. BECKMAN
## IN SUPPORT OF CONFIRMATION OF
## FIRST AMENDED JOINT CHAPTER 11 PLAN OF
## LIQUIDATION OF DEBTORS AND DEBTORS IN POSSESSION

I, David J. Beckman, make this Declaration pursuant to 28 U.S.C. § 1746 and state as follows under penalty of perjury:

### Introduction

1.      I am the Chief Restructuring Officer ("CRO") of each of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). I was appointed as the Debtors' CRO on or about March 16, 2013, shortly before commencement of the Debtors' chapter 11 cases on April 2, 2012. I have served as CRO throughout the Debtors' cases under a retention approved by the Court by an order entered on April 24, 2012 (Docket No. 181). I am also a Senior Managing Director with FTI Consulting, Inc. (including its subsidiaries and its subsidiaries' agents and independent contractors, "FTI"), a financial advisory services and interim management firm with numerous offices throughout the country. Additional details

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): AFA Investment Inc. (0331); American Foodservice Corporation (1780); American Fresh Foods, Inc. (7389); American Fresh Foods, L.P. (7302); AFA Foods, Inc. (0429); American Fresh Foods, LLC (7301); Fairbank Reconstruction Corporation (2405); American Foodservice Investment Company, LLC (9525); and United Food Group LLC (7584). Each of the Debtors formerly was located at 860 First Avenue, Suite 9A, King of Prussia, Pennsylvania 19406.

concerning my background, experience and qualifications are accurately stated in Exhibit A to

the Supplement to the First Amended Joint Chapter 11 Plan of Liquidation of Debtors and

Debtors in Possession (Docket No. 1433) (the "Plan Supplement"), which I incorporate herein by

reference.

        2.     I submit this Declaration for all permissible purposes under the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Federal Rules of Civil Procedure

and the Federal Rules of Evidence in support of confirmation of the First Amended Joint

Chapter 11 Plan of Liquidation of Debtors and Debtors in Possession (Docket No. 1393)

(including the Plan Supplement and collectively with all exhibits and any other modifications,

amendments or supplements, the "Plan"). Capitalized terms not otherwise defined herein have

the meanings given to them in the Plan and the Disclosure Statement with Respect to First

Amended Joint Chapter 11 Plan of Liquidation of Debtors and Debtors in Possession (Docket

No. 1394) (the "Disclosure Statement"), as applicable.

        3.     Except as otherwise indicated, my statements in this Declaration are based

on my personal knowledge and experience as described above, my discussions with relevant

individuals and advisors to the Debtors and my review of relevant documents, including, without

limitation, any applicable books and records and/or summaries of them prepared for my review

in connection with the Plan, the Disclosure Statement and this Declaration. I have read the Plan,

the Disclosure Statement and the Plan Supplement, and I am generally familiar with the

information contained in them.

        4.     If called to testify, I could and would testify as stated herein. I am

authorized and competent to submit this Declaration.

## The Plan Properly Classifies All Claims and Interests

5.      It is my understanding that the Plan properly classifies all Claims and

Interests that require classification.  The Plan reasonably provides for the classification of Claims

and Interests into six separate Classes.  These Classes reflect the differing characteristics of

the Claims and Equity Interests between Classes, as well as the distinct legal rights of the holders

of those Claims and Equity Interests in the separate Classes.  The Claims and Equity Interests

within each Class are substantially similar to the other Claims or Equity Interests within the same

Class.  Thus, and as explained further below, valid business, factual and legal reasons exist for

the separate classification of Claims and Interests here.

6.      The Classes are as follows:

(a)      Class 1 — Non-Tax Priority Claims;

(b)      Class 2 — Second Lien Lender Secured Claims;

(c)      Class 3 — Other Secured Claims;

(d)      Class 4 — Twenty-Day Claims;

(e)      Class 5 — General Unsecured Claims; and

(f)      Class 6 — Equity Interests.

7.      The Plan separately classifies Claims and Interests.  The Plan also

separately classifies General Unsecured Claims, Secured Claims and Priority Claims.  Because

of their different legal character, these separate classifications have a reasonable basis and are

consistent with the priority scheme of the Bankruptcy Code.

8.      A rational basis supports the separation of Other Secured Claims in

Class 3 and the Second Lien Lender Secured Claims in Class 2.  The holders of the Second Lien

Lender Secured Claims have agreed, pursuant to the Global Settlement, to accept specified

impaired treatment of their respective claims.  The Plan adheres strictly to this bargained for

- 3 -

result by providing for distributions on account of the Second Lien Lender Claims according to the terms of the Global Settlement. By contrast, the holders of the Other Secured Claims in Class 3 are not parties to the Global Settlement. As such, Allowed Other Secured Claims are unimpaired and will receive distinct treatment under the Plan; specifically, a Cash payment from the Plan Reserve equal to the Allowed amount of the Claim.

9.    Likewise, there are reasonable grounds to separately classify Twenty-Day Claims in Class 4. The sole source of any potential distribution to Creditors holding Allowed Twenty-Day Claims is the Creditor Recovery Pool, and any such *pro rata* distributions under the Plan are anticipated to be less than payment in full. Accordingly, the Plan provides that any holders of Twenty-Day Claims who do not object to this proposed treatment will be deemed to have agreed to such treatment pursuant to section 1129(a)(9) of the Bankruptcy Code. By contrast, the Plan Reserve will be the source of any distributions with respect to Allowed Administrative Claims and Allowed Priority Claims, and Allowed Administrative Claims will be paid in full. Thus, I believe that the separate classification of Twenty-Day Claims in Class 4 under the Plan is appropriate because the Plan provides Allowed Twenty-Day Claims with a separate source of recovery from, and different treatment than, Allowed Administrative Claims.

10.    In addition, Twenty-Day Claims are not postpetition expenses of preserving the Estates as are Administrative Claims. The Twenty-Day Claims are prepetition claims that otherwise are factually indistinguishable from general unsecured nopriority claims, but are entitled to a legal priority in the Bankruptcy Code. Thus, Twenty-Day Claims (as prepetition claims) are fundamentally different in nature from Administrative Claims. This distinction further justifies the separate classification of Twenty-Day Claims in Class 4 under the Plan.

ATI-2594676v7

11.     Finally, the Debtors' classification of Claims and Interests under the Plan is not an attempt to manufacture an impaired class that will vote in favor of the Plan and, as I understand it, does not result in unfair discrimination between or among holders of Claims or Interests.

## Implementation of the Plan

12.     The Plan provides adequate means for its implementation, including, without limitation: (a) the vesting of assets of the Estates in the Liquidating Debtors; (b) the appointment and powers of the Plan Administrator, in which capacity I intend to serve; (c) the establishment and funding of the Plan Reserve and the Creditor Recovery Pool; (d) the retention and pursuit of certain litigation claims by the Liquidating Debtors, under my supervision as the Plan Administrator, including the pursuit of the Avoidance Action Claims subject to the oversight of the Avoidance Action Committee; (e) the distribution of any net proceeds of such claims and distribution of the remaining cash proceeds of the sales of the Debtors' former Facilities and other collections on account of assets of the Estate consistent with the Plan and the Global Settlement; and (f) the dissolution and termination of the corporate existence of the Debtors.

13.     In addition, the initial funding of the Plan Reserve has been negotiated with the Second Lien Agent, NBPCo and the Creditors' Committee in good faith, and I believe that this funding will be sufficient to fund the activities, payments and distributions contemplated by the Plan.

## The Plan Has Been Proposed in Good Faith

14.     The Plan was proposed by the Debtors in good faith and in the belief that the proposed liquidation would maximize value for the Debtors' creditors. The Plan will enable the Debtors to liquidate the remaining assets in their Estates efficiently to maximize ultimate

- 5 -

Plan distributions on a fair and equitable basis, in accordance with the priorities established by

the Bankruptcy Code and consistent with the Global Settlement previously approved by the

Court. The Plan, including the Global Settlement incorporated therein, is the direct result of

extensive good faith, arms' length negotiations between the Debtors and the Global Settlement

Parties and thereby reflects substantial input from the principal constituencies having an interest

in the Chapter 11 Cases. The Plan has been proposed with the legitimate and honest purpose of

implementing the Global Settlement, completing the liquidation of the Debtors' assets and

maximizing the value of the Estates for the benefit of the Debtors' creditors.

   15. I believe that the foregoing, as well as the settlements embodied in

the Plan (including, without limitation, the Global Settlement incorporated into the Plan),

the resolution of certain formal and informal objections to the Plan (including the withdrawal of

the objections of all of the Class 4 Twenty-Day Claimants who Filed or asserted objections to the

Plan), the lack of any remaining objections to the Plan by any creditor and the support of

the Debtors' primary constituencies demonstrate the overall fairness of the Plan.

### Releases and Exculpation Provisions in the Plan

   16. In my opinion, the settlement, Releases and exculpation provisions of the

Plan are warranted, necessary and appropriate, and are supported by sufficient consent and

consideration under the circumstances of the Global Settlement, the Plan and the Chapter 11

Cases as a whole.

   17. Significantly, the Plan restates the releases that are contained within the

Global Settlement. As such, to the extent that the Debtors, their Estates and the Creditors'

Committee are among the Releasing Parties, the Court already has approved these releases in the

ATI-2594676v7

Global Settlement Approval Order, based on the filings and the presentations made and the hearings held in connection with the Global Settlement.

18.     Moreover, these releases are consistent with the orders of the Court concerning the Debtors' postpetition financing and use of cash collateral, and are made in exchange for the resolution of the claims and causes of action reserved therein.  In particular, I understand that the Creditors' Committee investigated the Estate causes of action against the lenders and insiders preserved in the Cash Collateral Order and the earlier financing orders in the Chapter 11 Cases.  Based on that investigation, I understand that the Creditors' Committee determined that (a) certain causes of action could be pursued, but posed significant risks and costs with no assurance of prevailing; and (b) the consideration provided in the Global Settlement (as incorporated into the Plan), including the Second Lien Lenders' agreement to provide a substantial portion of their collateral to fund the administration of the Chapter 11 Cases and distributions to junior creditors, as well as the other efforts of the Released Parties to pursue the confirmation and implementation of the Plan, are sufficient and appropriate in exchange for the releases contained in the Plan.  In the absence of those resolutions and the related releases, the Debtors and their Estates would not have access to cash collateral to continue the winddown of their remaining assets, would not be able to pursue the confirmation or implementation of the Plan and would not be able to pay any creditors junior to the Second Lien Lenders.

19.     Under the structure of the Plan and the projected amounts available for distribution, the only parties who are anticipated to receive distributions from the Creditor Recovery Pool are creditors holding Allowed Twenty-Day Claims.  If these parties opt to accept distributions, they will provide releases in consideration for the monetary gift from certain of the Released Parties to fund those distributions, as well as the other substantial efforts and

ATI-2594676v7

concessions of other Released Parties in connection with the negotiation, formulation and implementation of the Global Settlement and the Plan.  Absent this consideration, the Creditor Recovery Pool would not have been established or made available to creditors, and holders of Allowed Twenty Day Claims would receive no distributions in these cases.

20.     For the foregoing reasons, and based on my understanding of the legal issues involved, I believe that the Releases and exculpation provisions of the Plan are necessary and reasonable.

## Postconfirmation Management

21.     On the Effective Date, in my capacity as the Plan Administrator, I will become the sole director, officer and representative of the Liquidating Debtors having authority to act on their behalf.

22.     The Creditors' Committee and the Second Lien Lenders participated in the Debtors' selection of me to serve as Plan Administrator and in the negotiation of the proposed compensation for (a) my work as the Plan Administrator and (b) for the supporting work of my firm, FTI.

## The Plan Is in the Best Interests of Creditors

23.     I believe that the Plan satisfies the "best interests of the creditors" test. For the reasons explained below and in Section XVI.C of the Disclosure Statement, each holder of an impaired Claim or Equity Interest that has not accepted the Plan, or is deemed not to have accepted the Plan, will receive or retain, on account of such Claim or Equity Interest, property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

ATI-2594676v7

24.     All holders of Claims and Interests in these cases will fare no worse under the Plan than they would in a chapter 7 liquidation, and, in fact, are anticipated to fare better under the Plan.  As detailed in Section XVI.C of the Disclosure Statement, the Estates would be liquidated under either the Plan or in chapter 7, and in each case would be subject to the economic terms of the Global Settlement (which, by its terms, is expressly binding on a chapter 7 trustee).  The Debtors project, however, that liquidation under chapter 7 would diminish creditor recoveries as a result of, among other things, the additional fees and costs of a chapter 7 trustee (including the trustee's statutory fees), the anticipated loss of continuity of management and institutional knowledge, the costs associated with the replacement of professionals, the time and expense necessary for the chapter 7 trustee and the new professionals to climb the learning curve and other potential risks and delays.  In addition, the Debtors anticipate that the confirmation of the Plan will assist in expediting the implementation of the Global Settlement for the benefit of creditors.  For all of the foregoing reasons and the reasons stated in Section XVI.C of the Disclosure Statement, I believe that the Plan is in the best interests of the Debtors' creditors.

### The Plan Does Not Discriminate Unfairly

25.     Based on my understanding, the Plan does not discriminate unfairly with respect to Classes 5 and 6.  It is my understanding that the Claims in Class 5, which is comprised of Allowed General Unsecured Claims, are legally distinct under the Bankruptcy Code from the Claims in the other Classes of Claims under the Plan.  Therefore, these Claims are properly classified in a separate Class and have not been classified separately for the purpose of unfair discrimination compared to other Claims.  With respect to the Equity Interests in Class 6, these interests are not classified separately for the purpose of unfair discrimination because Class 6 comprises all of the Equity Interests in the Debtors.

- 9 -

26.     Based on my understanding, the Plan is otherwise fair and equitable with respect to Classes 5 and 6 because:  (a) for Class 5, no holder of a Claim that is junior to the Claims in Class 5 is receiving or retaining any property under the Plan on account of such Claim; and (b) for Class 6, no holder of an interest that is junior to the Equity Interests in Class 6 is receiving or retaining any property under the Plan on account of such interest.

**The Plan Is Feasible**

27.     In my opinion, the Plan is feasible and can be implemented consistent with its terms.  Based on (a) the budget provided for in connection with the Debtors' access to cash collateral, (b) the proposed funding of the Plan Reserve and (c) the amount of Cash already available for use under the Plan, I believe that there will be sufficient funds to make the payments and distributions required by the Plan and otherwise to implement the Plan.

28.     The Debtors, with the input of their Professionals, have forecast the anticipated funding needs of the Plan Reserve (the "Projected Funding").  The Projected Funding includes the costs of paying (a) all Allowed Other Secured Claims, Priority Claims and Administrative Claims; and (b) all disputed Other Secured Claims, Priority Claims and Administrative Claims in the event that these Claims become Allowed Claims in the full disputed amounts.  The Projected Funding also includes sufficient amounts to fully implement the Plan, liquidate remaining Estate assets (including the Litigation Claims) and make Plan distributions to creditors.  Based on my review and analysis of the Projected Funding, I believe that the Plan Reserve will be sufficient to satisfy expected Plan Expenses and the expected Allowed Claims designated under the Plan to be paid from the Plan Reserve.

29.     In addition, because the Plan expressly contemplates liquidation, further financial reorganization after confirmation is not a concern in these cases.

ATI-2594676v7

**The Debtors Do Not Owe Retiree Benefits**

30.    The Debtors do not owe any payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the Debtors.

**The Principal Purpose of the Plan Is Not
the Avoidance of Taxes or Section 5 of the Securities Act**

31.    The principal purpose of the Plan is to liquidate the Debtors' assets for the benefit of creditors and is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  I am not aware of any allegation from any party in interest, including but not limited to any governmental unit, that such avoidance was the purpose of the Plan.

**Adequate Means for Implementation of the Plan**

32.    In my opinion, (a) the implementation of the Plan in accordance with its terms will promote the maximization of the value of the ultimate recoveries under the Plan in a fair and equitable manner and (b) the means of implementation set forth in the Plan are adequate. The means of implementing the Plan are not intended to hinder, delay or defraud any entity to which the Debtors are indebted on the Effective Date.

33.    On the Effective Date, all remaining assets in the Debtors' Estates will vest in the Liquidating Debtors, to be administered under my supervision as the Plan Administrator. The primary objective I will have as the Plan Administrator will be to liquidate such assets to maximize their value and to distribute the net proceeds pursuant to the Plan (including the Global Settlement).  As Plan Administrator, I have no intent to continue or engage in the conduct of a

ATI-2594676v7

trade or business on behalf of the Liquidating Debtors, except to the extent necessary and consistent with the Plan's liquidating purpose and as reasonably necessary to conserve and protect Estate assets and provide for the orderly liquidation thereof.

### Executory Contracts and Unexpired Leases

34.     The Plan provides for the assumption of certain agreements specified on Exhibit B to the Plan Supplement and for the rejection of all remaining executory contracts and unexpired leases of the Debtors upon the occurrence of the Effective Date.  The Debtors' determinations regarding the assumption or the rejection of executory contracts and unexpired leases are based on and within the sound business judgment of the Debtors.  I believe that the designated assumption or rejection of executory contracts and unexpired leases under the Plan will aid in the implementation of the Plan and are in the best interests of the Debtors, their Estates, the holders of Claims and other parties in interest in the Chapter 11 Cases.

### Substantive Consolidation of the Debtors

35.     The Plan proposes the substantive consolidation of the Debtors' chapter 11 Estates.  I believe that the substantive consolidation provided for in the Plan is in the best interests of the Debtors' Estates and creditors and will assist in the efficient implementation of the Global Settlement and the Plan.

36.     By incorporating the terms of the Global Settlement, the Plan provides for distributions on certain Allowed Claims and other Plan payments to be made from specified pools of funds – i.e., the Plan Reserve, the Creditor Recovery Pool, the Litigation Claim recoveries and the Avoidance Action recoveries.  These funds are being contributed from Second Lien Lender collateral that, as I understand it, otherwise would be entirely unavailable to other creditors, and which is allocated, distributed or otherwise utilized under the Plan irrespective of the separate identities, affairs, assets and liabilities of each Debtor.  Under this structure, the

- 12 -

proposed consolidation of the Estates under the Plan is in the best interests of creditors and, as I understand it, will not prejudice creditors in comparison to their rights, priorities and interests either outside of bankruptcy or in the absence of the Global Settlement and the Plan. Moreover, because the liens and claims of the Second Lien Lenders significantly over-encumber all or substantially all of the Debtors' remaining assets, I believe that incurring any cost or burden to disentangle the Debtors' Estates would serve no beneficial purpose and therefore would be a waste of the Debtors' limited assets. I believe that this would harm the Debtors' creditors.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

ATI-2594676v7

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 3, 2014 in Denver, Colorado.

By: _____
Name:   David J. Beckman
Title:     Chief Restructuring Officer
           AFA Investment Inc., *et al.*

ATI-2594676v7